Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Carl A. Walker presiding. Case number 25-2167, Dimitrios Giokaris v. Illinois Department of Financial and Professional Regulation. And good afternoon, everyone. I am Justice Walker. I have here with me today Justice Patinsky and Justice Gamorath. And we'd like to ask the parties if you could, attorneys for the parties, if you could please introduce yourselves. Let's start with the attorney for the appellant. Good afternoon, Justices. My name is Michael Petticone, and I represent, of course, the appellant. Okay. Thank you, Mr. Petticone. And Mr. Jacobson? Good afternoon. Assistant Attorney General Ben Jacobson on behalf of Defendant Appellee. Excellent. And we're going to give each one of you 20 minutes total time for your argument. And Mr. Petticone, we'd ask you if there were any time that you wanted to reserve for a rebuttal. I would like to reserve five minutes for rebuttal. Five minutes? Okay. So you'll take 15 and reserve five. Okay. And with that, you can go ahead and get started. I will say that you can, if you want to go a little bit into the facts, you can, but we're all three extremely familiar with the case. So it's up to you what you want to do. Go ahead. You can get started. I assume that you would be very familiar with the facts, and I'm hesitant to just simply just go through the brief. And I know you don't want me to read from the brief, but there are some points that I would like to re-highlight again. I guess we could start with some of the facts that involve the suspension of Dr. Jay Garrison, automatic suspension, that took place on December 5th of 2024. He was subject to a 2023 consent order that required him to make quarterly reports to the department for specific matters. And he was also, as part of that, was required to report certain occurrences. On December 5th of 2024, the director of the department entered an order automatically suspending Dr. Jay Garrison from the practice of medicine for a minimum, indefinite period of a minimum of one year. That order was based upon chief of probation for the department at Temple Hall. And Temple Hall's affidavit contained the scantest of factual allegations and more so her conclusions that Dr. Jay Garrison had violated the terms of his probation order. And that probation order is known as the 2023 consent order, as we discussed it in our briefs. Part of that order was a section L, which was the order, the section that provided a means of regress for Dr. Jay Garrison in the there was an automatic suspension imposed upon him. The department in that consent order agreed that if Dr. Jay Garrison filed an appropriate petition within 30 days of the day of the suspension where he contested the factual... Okay, so I'm going to stop you there, Mr. Petticone, just a second, because we do, we know all of that and we understand all of that. What we, could use some clarity on is what fact or facts did he actually contest? Because it seems that from my reading, at least of the briefs, that the arguments are that he didn't contest anything, that no, there were no factual issues. Okay. I'm sorry for going into the detail that you didn't want me to. No, no, you're fine. You didn't do, you're perfect. Keep going, keep going. As I read the words factual basis, I think of it somewhat in terms of a factual basis for a search warrant, for example. What's the factual basis that the person set forth? And so he was required to contest the factual basis for the suspension. And so when you look to what's the factual basis, you look to what did, what was attached to that order that sets forth facts. And the facts that were attached were restricted to the affidavit of Temple Hall. So in my mind, the factual basis is whatever she said that was in the nature of a factual assertion, as opposed to a conclusory allegation. And so I didn't believe that it's for me to add necessarily affirmative facts on behalf of Dr. Gekaris when I found her factual basis so wanting in detail as to not be sufficient to support the discipline that was there. But what was in dispute? What would you say, what were the factual disputes at the time that this matter came before the Administrative Watch Act? Well, I don't know there was much factually in dispute as much as there was a difference in how she viewed the petition that I filed. I didn't believe that I had a guess at what the facts were in Temple Hall's affidavit that weren't present. I thought I was entitled to rely on the assertions that she made. And if I viewed those as insufficient, I could contest that factual basis by saying that basis is insufficiently set forth any basis for discipline. She didn't say that Dr. Gekaris did anything in particular. And she didn't say he failed to do anything in particular. She just said what the consent order was. And in one instance, she added the words review, the required report of review, which was not, of course, in that consent order. So let me ask my question a little differently then. What fact could you have disputed that would have prevented the administrative law judge from denying you a right to a hearing? Maybe that makes it more clear as to where I'm going. Because the administrative law judge felt that there were no facts in dispute. Therefore, the issue could be decided on a legal basis, right? And we're going to get to that because I'm going to ask you whether or not you were allowed to make legal arguments. Because that's important too. But we're not there yet. I just want to get clear on the factual issues surrounding this case. I think when we got to the point where the administrative law judge made her ruling, that was down the road from when we filed the petition. And when we filed the petition, no one said the petition was facially insufficient to entitle us to a hearing on the merits. And there was a date set for the hearing on the merits. There was discovery that was ordered by the judge. There was compliance with the discovery schedule. There was my motion for the subpoenas. At that point, no one was saying that we don't think your petition sufficiently contested the factual basis to allow you to have a hearing. So, what was happening was the department was treating that as not having contested it sufficiently. And of course- I'm not sure that that's how it progressed. So, my understanding is, as you mentioned, there was some time passage. And over that time, it became very clear to the ALJ that the factual basis for the suspension was not in dispute. You were disputing the effect of the saying that the investigation was not, in fact, an investigation that your client had to report. But you were not contesting that he had notice of that proceeding and didn't get notice to the agency as the consent order required. So, to Justice Walker's point, we're asking you, is there any factual basis that you would have demonstrated to show that your client did report it or that that investigation didn't occur? I think the answer is no. That's all agreed. And so then it's just what's the legal effect of those uncontested facts? Okay. Are you asking me? I'm asking you, like, is- that's my understanding of it. Tell me if I'm wrong. Okay. I had admitted on the record that Dr. Giacaris received the envelope from- that was mailed to him by the Illinois Department of Health and Family Services. I didn't go beyond that as to whether he knew what was inside that envelope. I was to have received notice as well, but never received notice before the suspension. So, I can't go to and to do anything that's not in the record. But your client, it's undisputed that your client received it. In fact, he contested it. Correct? He contested it. So, I mean, you can't tell us, Judge, remand this for a factual hearing because you can't put your client up to say, oh, no, I didn't know anything about it. That's- I mean, we're not going to- you know, you're not entitled to a factual hearing when there I thought that the threshold issue in this is whether or not the petition on its face satisfied the language in Section L, whether that petition sufficiently contested the factual basis. I'm hearing- The question- so, Judge, to reframe it, the question really is, is was your client entitled to a hearing on the merits? That's how you have raised your appeal. Is your client entitled to a hearing on the merits if there is no factual basis for the suspension that was contested? So, I think what we're saying is we don't see in this record that the factual basis was contested. I think you're obviously taking a different view of I mean, is there any uncontested fact? I don't think so, correct? So, now the question is, you could- In the record, there's no fact in the record as to whether Dr. Giacaris reported or didn't report the- either the investigation or the notification from the Illinois Department of Health and Family Services regarding the denial of his application for reinstatement. There's nothing in the record that states that one way or the other. Okay. There's a finding to that fact, and there is an affidavit which the ALJ construed as saying he didn't report it. And that affidavit doesn't state that he didn't report it. Okay. So, the ALJ interpreted it as such. Well, I mean, it's clearly erroneous to say that she stated that he didn't report it when she didn't. Did you contest that he reported it? No. I was taking the position that what she stated in her affidavit was facially insufficient to support the order of suspension. Okay. So, let me just take this a step further. So, because the question really is, what testimony or evidence would you have presented if a hearing had actually occurred? What would you have- What would your client have testified to? What would have- But I have to say things, Judge, that are outside the record. Is that what you're asking me to say? No, not necessarily. I'm just asking what facts would have been argued? What would have been the argument, the factual argument, before the Administrative Law Judge? Well, the argument would have been that my client, although he received the letter, didn't open it and assumed that I wouldn't be receiving a copy since I represented him in the matter. And he was unaware that the Department, the Inspector General's office, had inadvertently failed to send it to me, even though they were aware of my representation of Dr. Giacaris. So, that would have been one thing. One- Wasn't it incumbent on you or your client to say, oh, he never opened it? Well, in the context of when I was trying to answer the questions, truthfully, I was being asked by the Administrative Law Judge in connection with the subpoena hearing. What was being raised was whether or not there would be an issue as to the actual delivery of that letter to Dr. Giacaris. Did he ever receive it or not? And I was just trying to be honest that I knew he had received it. I knew that the tracking number showed, tracking showed that he had received it. I didn't think at that point in time I needed to disclose that. I wasn't asked whether he'd read it. Okay. Let me ask you this. Didn't your client, after he received the denial letter, didn't he try to contest that? I'm sorry, I don't understand your question. Did he contest the denial of the Medicaid reinstatement? He contested it after I became aware of it on December 5th. I contested it because that was the first time I had seen it. He didn't contest it because he didn't read it and he assumed that, as counsel for him, that I would understand whatever the contents of that was. Counsel, if you're getting this information from your client, that's fine. But something just presumably well read gets a letter that he's waiting for to find out about his Medicaid application and just keeps it sealed for over a month to give it to you. Does that ring true? Unfortunately, it does ring true, but I could understand how you would look at that as being bizarre. I think it's probably the best characterization. I certainly would have liked to have known about it sooner than when I learned that he had been suspended from practice of medicine. Mr. Petticone, there's no issue about whether or not Dr. Giacaris received something from the department that he had certified causes of death without verifying the accuracy of the diagnoses. He entered a consent order after he got that notice, but he didn't tell anybody under the consent decree that he got that notice. Isn't that right? Sorry, I don't understand your question, Justice. He got a certified, he got a notice saying that Dr. Giacaris certified causes of death without verifying the accuracy of the diagnoses. Then he entered a consent order imposing a 30-day suspension or infinite probation and a fine and CME requirements monitoring. Part of this consent order required Dr. Giacaris to notify the department of any adverse action against him from anybody else. Once that happened, he got notification about the MQRC finding that his medical care exceeded patient needs, was inferior, posed a risk of harm. Just holding that envelope and seeing who it was from, he chose not, you're telling me that he chose not to open it and followed the rules of the consent order that he signed saying he would tell them if he got anything from anybody else? I'm saying he received that on the 28th and didn't learn of what it contained until December 5th of 2024. Really? Thank you. I don't control the facts. Just wanted to double check them, that's all. Was there anything else, Mr. Petticoat? Well, it doesn't sound like, to me, that was sort of a threshold issue. I think when we filed that petition, we did contest the factual basis. We didn't affirmatively state additional facts on what we could have guessed the order was based on, but I just felt that there was a we were entitled to that hearing, even though there might have been a subsequent judicial admission that occurred, it didn't change our entitlement to the hearing. At which point, we would have been able to introduce additional witnesses, such as the lawyer who didn't draft the consent order to show that any ambiguous terminology in that consent order was attributable should be construed less favorably towards the department than towards Dr. Giacaris. We would have brought a witness to testify that there was additional um, that the letter that was used for purposes of the adverse action, which was the letter denying the reinstatement, that it was predicated upon the rules of the Illinois Department of Health and Family Services, which made it clear that that letter was not action of any kind because it wasn't final yet. Tell us the reason why you say it wasn't final yet, because was it, was it, did he, he was appealing that ruling? Is that what you're arguing? The ruling was appealed and the regulation, um, after the ruling was appealed, what, what was there, was there any further orders entered or any further letters received? So there were letters, there were further rulings that's pending right now. It is pending, uh, the administrative law judge has continued it from time to time to see how this court rules, but if I may, this, uh, 89 Illinois Administrative Code 104-210 states that in actions such as this, which is the denial of the application for reinstatement of the program, that the action shall not take place until the final administrative decision has been issued. And that has not happened, correct? That has not happened. So that means the action, the so-called adverse action, it hasn't occurred yet. The letter alone that was sent out to Dr. G. Harris and not me, doesn't constitute action according to the rules, the regulations of the department. It states that no action shall occur. So until the final decision is issued and it hasn't been issued yet. So let me ask you a quick question though, where would we be if he had never requested reinstatement of his Medicare, uh, authority? Where would we be? Because nothing would have happened, correct? We would, he would still be dealing with the consent decree. So just so I'm clear, because you're, you're, you're, you're, you're kind of going in and out and I don't know, maybe it's just a Zoom meeting or it may be my, my Zoom, but so if he had never requested to be reinstated, he would still be practicing. Reinstated for, for, for Medicare, right? Uh, it's Medicaid. Medicaid. I'm sorry. Yeah. So if he hadn't, um, applied for reinstatement after having withdrawn 25 years earlier, we wouldn't have an issue. Um, he would have continued to treat Medicaid patients and just not got paid for it as he hasn't for 25 years. Um, but we wouldn't have a controversy at all. And so now we do have the controversy, but we have the controversy because they originally did not. He wouldn't have been suspended. Yeah. And what you're telling us now though, is that they originally denied it, but he was in the process of appealing that decision, correct? Yeah. He appealed the decision and that because of that appeal, it means that the action of the denial doesn't take place until the appeal has a final decision rendered in it. But the action didn't give him the benefit of reinstatement because he was disenrolled. So when you say that the action isn't final, it's not as, I mean, the action said, no, you're not getting back in. That was the status quo, correct? Yeah. He withdrew in 1996, hadn't been in it until 2019, and still isn't in it. And in 2022, I guess he filed this application for reinstatement. And then the letter went out, I believe it's in October, notifying him that his application had been denied. But according to the author, the department that issued that notice to him that he had his application been denied, according to their rules and regulations, that very letter, which is governed by, says that the action shall not take place until a final administrative decision has been issued. But the consent decree says, 10 days of any adverse action. It doesn't say a final administrative order. It says any adverse action and any investigation, right? Yes. Initiated by a state agency or whatever. Right. But let me ask you, Mr. Petticone, is it, and I know this is your argument, so I want you to kind of help me make sure I understand it. If it's just simply maintaining the status quo, because he already had withdrawn from Medicaid, and he was now applying to be reinstated, and they denied that, to me that sounds like just the status quo. I'm not sure, I'm asking whether or not that is adverse action. Maybe that's a question for Mr. Jacobson rather than you. I had made that argument previously, that it didn't change his practice in the slightest, because he continued to see the same patients, you know, until he got suspended. He continued to see the same patients, and depending on how broadly you want to construe adverse action, it could be almost anything. It could be just letting you know, it's going to take us another three months to decide your application. He would have preferred to get a different letter, but I don't know that that makes it adverse action, because it didn't change his practice in any aspect. And so let me ask you though, so when the administrative law judge decided that you weren't going to get a hearing because there were no factual disputes, I assume the administrative law judge went on to make a decision in the matter, were you able to make legal arguments at that point, or was it just a decision made without hearing from you? I filed a motion to reset the case for the hearing, so that would happen before the 30th day as required under the consent order. And the department filed a response to that, where they made their arguments that we shouldn't be entitled to a hearing because of my admission about him having received the envelope. I filed a reply to that and argued that once we had filed the petition contesting the factual basis for the suspension, that we had a vested right to have this hearing, and it couldn't be taken away simply because I made that admission in connection with the subpoena hearing. And she issued her written ruling, and of course I had also filed in anticipation of the hearing, I had filed motions in limine to bar hearsay admissions that were set forth in that letter, and the ALJ ruled to deny my motion to reset the matter for the hearing, and then incorporated the very hearsay that I sought to exclude by my motions in limine, and then decided there's no need, based on her decision, there's no need to rule on my motions because they're now moot because she's stricken the matter basically from the call. And that would be the end of Dr. Giacaris's attempt to get a hearing. Did I explain that okay? You did, but there's this one part that I'm probably missing, you probably didn't make it clear, but I may need more clarity. So after all of that occurred, a ruling was made, and did either side get a chance to argue before the administrative law judge? I realize that you had submitted your original proposal in response and reply, and then a decision was made. Prior to that decision, were there any arguments made before the administrative law judge in terms of legal arguments? No, I believe she said in her order that she finds pursuant to one of her regulations that no oral argument was necessary on this matter. Right, and no argument is to the facts, but it seems to me that you should always be able to make legal arguments. Well, she issued her order, and that order made it clear that the case was stricken, it wasn't going to be reset for trial. There was only one day left before the 30 days would be gone anyway, so that's when I moved to file the point for administrative review in the case. The arguments that you made to the ALJ included the same arguments that you're making here about the insufficiency of Paul's affidavit and the fact that this was not a true adverse action and there was no investigation initiated by an agency. You argued that in front of the ALJ. In my response? Yeah. I don't recall, Justice, what exactly, but that would make sense that I would have made those arguments. And so what language in the consent order you believe either supports your argument that there was no adverse action or perhaps defeats your argument that there was no adverse action? What language in the consent order? Excuse me just one moment. Yeah, go ahead. You're over your 15 minutes, but I want to get this right, so we're going to let you take the time and get that. The adverse action section 4 of the conditions for probation said that the respondent shall notify the department of any adverse action taken against them related to the practice of medicine by another entity, including but not limited to, and then it mentions state agencies and whatnot. So then the question becomes whether or not this was adverse action. Yes. Which comes back to the question that I was asking you earlier, about I'm just not sure whether this is adverse action because it just maintains the status quo, nothing changed. He already couldn't serve Medicaid patients, and now he requested an opportunity to serve them. They said, no, you can't. And so is that adverse or is that just the status quo? Actually, if I may clarify, Justice, he was allowed to see Medicaid patients before, throughout the 25 years, all the way through. He just wasn't able to bill for it. So he continued to see Medicaid patients without charging. Right. So therefore, when they ruled that he would not be reinstated, he still could continue to see Medicaid patients and just could not charge them, right? Yes. I believe I put that in my petition contesting. It was filed in December of 2024. So he did continue to see Medicaid patients, and he saw them throughout from 1996 to present. He just wasn't able to be paid as a provider for doing that. So it had no effect on his practice. It essentially left him in a status quo position with regard to his having withdrawn 25 years previously from that program. But I would also like to mention, if I could, I know I'm over, but with your permission, in paragraph L of that consent order, it does not state that the scope of the hearing on the merits is restricted to the factual basis. It doesn't restrict the hearing on the merits to anything. It just states it's a hearing on the merits. And the factual basis component of it has to do with whether he's eligible for that hearing in the sense that he's got to file a petition contesting the factual basis for the suspension. But if you agreed that we sufficiently contested the factual basis for hearing, then at that point, we're entitled to that hearing on the merits where we could not only argue factual issues, but also legal issues. And we never got that far based on the judge's ruling. Well, if we were to find that there was no adverse action here, where would that leave us? I think you still have to decide whether or not the peer review of the physicians that were hired by the Atlanta Department of Health and Family Services to review charts of Dr. Giacaris fell within the definition of C5 of the conditions of the 2023 consent order. It stated, the respondent shall notify the department when he is the subject of any investigation initiated by another entity, including but not limited to licensing authorities, insurance companies, and state and federal agencies. Now, why is that relevant? Why is that relevant? This wasn't an investigation. He just simply asked to be reinstated, and they said no. So does that constitute an investigation? That was my argument that this is not an investigation, that the officer inspector general has a Bureau of Investigation, and this fell underneath their Bureau of Medicaid Integrity, where they will assemble this MQRC. You're saying that that's not an investigation, but we know that they reviewed records. You and your client appeared before them, and they came out with some pretty scathing facts against your client, clearly related to his practice of medicine. Your position is this is not an agency? That's one. It's also not an investigation. It was a peer review. I don't think the plain meaning of those words, the intention of the parties at the time was that it would cover a peer review. Well, the peer review, the other doctors that were looking at his work, in order to even call it a peer review, they had to look at the records of his work, and in looking at the records of his work, they found they made a finding, a new finding. This isn't a finding from two years ago or 12 years ago or 25 years ago. This is a finding in 2024 that medical care exceeded patient needs, was grossly inferior, and posed a risk of harm. They looked at the records of his cases, and that is an investigation. Not an investigation by police, but an investigation by doctors, and they do that on purpose because doctors understand all the terminology and the way things are overlapped, and they can pull those strings apart. So, of course, it was an investigation. It was an investigation by other doctors, and they made a finding that was not in favor of your client. So, it wasn't the status quo that they were keeping. They were making a new decision that he couldn't come back for Medicaid patients to be paid for Medicaid. Justice, they got to make a decision. They made findings and submit those to the department that then made a decision. Excuse me, counsel. The committee of doctors had to make a decision what to put in their findings. They made that decision, and they put it in their findings. They didn't send it back to the director saying, we don't know, we can't find anything, we don't see anything, or it's all too confused. They sent it back with specific findings. The findings that were a result of their review of his medical work. That was a brand new set of findings in 2024. So, I don't see how you can say that this wasn't something that needed to be reported to the director, or to the department of professional regulations under the consent order. I mean, he knew he had to tell them something. I don't think that he, or I viewed the peer review by doctors and the consider process of the consideration of his application for reinstatement as an investigation initiated by a state agency. You don't think that's an investigation? Well, it's not by a state agency, clearly. Well, isn't it an arm of the agency? In other words, the agency itself is convening these doctors as part of the investigatory body, because they are the experts who should be reviewing this versus admin perhaps. So, I mean, I think it's naturally an extension of the agency. I believe that they're contracted out. They probably have a number of these people that are willing to serve the state, and they're paid to do that. I didn't think that consideration of his application for reinstatement necessarily would be considered an investigation. And I viewed their peer review of his records with the recommendation as being a way to convey information to the department with respect to how they wanted to rule on his application for reinstatement. So, I didn't think it was an investigation. Mr. Pedercone, you're out of time, so we'll come back to you on your rebuttal. Mr. Dickerson? Thank you, Your Honor. Mr. Dickerson, we're going to give you just as much time, so we don't want you to feel short. Thank you. I appreciate that, Your Honor. So, this appeal boils down to a few key points, I think, as Your Honors highlighted during the opening portion here. Dr. Giacaris was entitled to an evidentiary hearing only if he challenged the factual bases of the summary suspension order, and he failed to dispute those factual bases. So, he was not entitled to an evidentiary hearing. And thus, because he was not entitled to an evidentiary hearing, the denial of his petition did not deprive him of his due process rights, and then the ALJ contract correctly construed- You agree, Mr. Dickerson, that he was entitled to make legal arguments, right? Even though he- Yes, Your Honor. Okay, go ahead. I'm sorry. I apologize. He did so here in both the papers and the oral argument before the ALJ with respect to the- So, that actually was my question, Mr. Dickerson. So, you're saying that there were oral arguments before the ALJ regarding the- He was able to make those legal arguments during that oral argument, correct? Yes, Your Honor. When he basically appealed, administratively appealed, got that second review from another ALJ on his request for subpoenas, the vast majority of that hearing was the legal arguments regarding whether this constituted an adverse action and an investigation under the consent decree. And tell us what makes it an adverse action, because I struggle with that a little bit, and you've heard what I've had to- what my thoughts are on it. So, tell us- help me with it,  So, there's a couple of points that I want to make on that. Kind of the threshold point is that whether or not the Department of Healthcare and Family Service regulations consider it a final action doesn't govern the Department of Professional Regulation in a consent order between it and a third party. And then, if we look at the specific language of the consent decree in Section C-5, it says any adverse action, not any final adverse action or adverse final action. And I think that that is a key distinction here, which we have, it's any adverse action. Well, but what about the argument that it was the status quo, that nothing really changed, because he already couldn't bill for Medicaid patients, he was allowed to see them, and then after the- after they refused to reinstate him, he was still- it was still okay for him to see Medicaid patients, he just couldn't bill, right? That is correct, Your Honor. However, I think as- I think it was Justice Paczynski pointed out, there is that new finding by the MQRC that the care he was providing to his patients was grossly deficient, which is certainly adverse with respect to his practice of medicine. But then- Was it deficient, or I thought I heard earlier that it was an- it was- it was overreach? It was that he was providing care in excess of needs, that the- there was a risk of harm, and that the- I- I- gross- grossly deficient is- And inferior, yes. And so was there any evidence of any harm that had been done to anyone? Part of the report? Not that's in the record, Your Honor. All we have is the- the IDHFS denial letter that quotes from the MQRC's finding, which is that- that single sentence statement, which says, you know, in excess of needs- Because I'm sure you agree, Mr. Jacobson, that, you know, having a medical license is kind of property right, right? I mean, you're going to- taking that away is a big deal, right? It is, Your Honor, and he received all of the process that he was entitled to here. We have this consent decree where he agreed to the summary suspension of his license if any of these conditions were met, if he failed to satisfy the probation requirements. And so tell us what- what- what parts of that you believe were violated? So- What parts of the consent- consent order? There were two parts, Your Honor. There- he was required to report an investigation, and then he was also required to report any adverse action. And- Okay, so your argument is that both- that you had both. You had an adverse action, and you also had an investigation. Yes, Your Honor. And going to the- to start with the investigation, since chronologically, that's where we're at. You know, there isn't the word review in the consent decree, but the term investigation isn't defined there. So you look to the plain common meaning of the- the term investigation, and you then determine whether what occurred here meets that definition. And so the- the fact that review doesn't appear in the- the consent decree is not here nor there. It's whether the- the acts of what- what occurred meet that definition. And both the- with an investigation and with the plain meaning of a review and what occurred here, it's an examination into the truth of some matter, an inquiry. And what we have here is the MQRC was authorized by IDHFS to look into the care that was provided by Dr. Jude Harris here. They requested- Now, what do you believe it means to exceed patients' needs? Just flipping back for a second to that, that you mentioned that that was one of the- that was part of the result of the inquiry or whatever you want to call it, investigation. So there isn't really any discussion of this in the record. I can certainly talk about my, you know, what I as a layman would think would- would meet that definition, but- Well, let's stick to the record. So you're saying there's nothing in the record that- that explains that? Is that what you're telling us? No, Your Honor, but that's not relevant to what we're addressing here. We're not addressing whether the- the finding by the MQRC was correct or not. It's just whether or not once there was this- So you believe- I'm going to have to pause you for a second because you're saying that it doesn't matter whether their finding was correct. They made a finding and therefore he's going to lose his medical license. And that just seems so egregious to me. So, and I don't know, am I the only one that sees it that way? I mean, you're saying what they decided doesn't really matter and it doesn't matter whether they were right or wrong about it. I'm not following that. So just help me, keep me- keep me with you. Yeah, so there's kind of two- He has applied for the reinstatement of his Medicare provider license with IDHFS. And then there's this consent decree that he entered into with the Department of Financial and Professional Regulation, which is what we're dealing with here. And in that consent decree, he agreed that he would report any investigation and any adverse action. So once he, you know, agreed to those conditions, he is held to those conditions. And he also agreed that if he violated any of those terms, the director of that division could summarily suspend his order. So you- go ahead, I'm sorry. You can continue. You're going to tell them to hear you out. Thank you, Your Honor. I'm just pointing out that you, when you agree to those conditions, you're held to them and you can waive the normal procedures that you would be entitled to under the Medical Practice Act and things like that. You can waive those both as a matter of statutory law and as a matter of due process, as we pointed out in our brief. So, you know, these are the conditions that he consented to. And once he failed to comply with those conditions, then, you know, the truth of the NQRC review, that's what he's pursuing in the parallel proceeding before the Department of Health Care and Family Services. So had he never requested reinstatement, we probably wouldn't even be here today, correct? I'm certainly not under the conditions that we are, Your Honor. Right. So- and that's- so- so I'm just trying to- I'm coming back to this adverse action thing. And all they did is maintain the status quo by simply saying, no, you can't be reinstated at this time. So I'm not sure that that- that amounts to adverse action. Just sort of deal with that part alone. I realize you've got two issues here- larger issue. I think there's kind of two elements that show adversity here. One is he- he was requesting that he receive the- this license so that he could be financially reimbursed for this care he is providing. So he was denied something that he wanted and that adversely affected his financial interests because he will continue to not be reimbursed for that. But then to- Does it adversely affect? It just didn't enhance. I don't know if it adversely affected because he already wasn't getting paid. So to now be able to start getting paid would be an enhancement of his financial situation. To be told, no, we're still not going to allow you to start getting paid is not necessarily- it's not necessarily a- it's not necessarily adverse. It's just that your status quo. So I think looking to the context of employment discrimination, where we also have the concept of adverse action, adverse employment action, there's no question that the denial of a promotion or the denial to hire is an adverse employment action. It's considered an adverse employment action. Well, sometimes I think in employment cases, it depends on the reason for it. I mean, it's not always an adverse action. I don't know if that's the best example, but if that's the best you have, that's fine. I think that, again, there's two- those are two separate things, Your Honor. Whether or not the action was adverse is separate from what the motive was for imposing that adverse action. And so just looking at the question of what is the adverse action and if an adverse action has occurred, the denial of a promotion or being hired for a job is considered an adverse action because it is something that's contrary to your interest, even if the status quo doesn't change. Okay. What other arguments do you want to- I'm sorry, I think someone has a question. No, I think that's a fair analogy. And then investigation with respect to the- it needed to be twofold, right? It had to be initiated by another entity. And the question is whether this peer review body is an agency. Like within- and it was a pretty broad definition, right? It doesn't say by X agency because I forgot the exact language, but it was- it could be insurance. It could be something else, correct? Yes. Let me read that definition for you, Your Honor. It says the subject of any investigation initiated by another entity, including but not limited to licensing authorities, insurance companies, and state and federal agencies. So the fact that the MQRC may not be a state agency, technically and honestly, I'm not- I don't know the answer to that. It certainly is another entity. It is a body that has an identity separate from that of the members, which is the definition that my colleague helpfully provided in his reply brief. There's no question that this medical review board fits that definition. So it is another entity that initiated this investigation after he applied for this license. It is clear, though, that the Medical Quality Review Board is part of the Illinois Department of Health and Family Services, and that is an Illinois department. So it is a state agency. You know, I believe so, but, you know, I don't want to state definitively because it may technically be, you know, like a semi-separate agency that is licensed out by IDHFS, as my colleague pointed out. But to my understanding, it is at least constituted by health care and family services for the purposes of conducting these medical quality reviews on behalf of the department, the Department of Health Care and Family Services. And then it makes the recommendation and the department makes the final decision, but it is acting entirely under the auspices of health care and family services. So, you know, there seems to be a little bit of a disconnect here with respect to the entitlement for a hearing, because just because you file a petition or a complaint or something like that to initiate judicial or quasi-judicial proceedings, that doesn't always mean that you're going to get to whatever the final hearing or trial is going to be. Intervening events can occur that remove the entitlement to that hearing. For instance, like here where you don't challenge any of the factual bases. And, you know, I'm not aware of any authority or example and counsel has not provided any where there is, there are no, all the facts are uncontested and you still hold an evidentiary hearing anyway. So, we need to ensure that we're considering this consent order and section L of that consent order with the review hearing in the context of the reality that we have, which is that it initiated administrative proceedings. And an administrative proceedings like any other quasi-judicial or judicial proceeding, you can end up going out, you can end up having the petition denied or the complaint dismissed prior to a full evidentiary hearing or even a full hearing where the facts are uncontested and everyone has the opportunity to present their legal arguments. And that's exactly what happened here as we discussed earlier. And then, you know, one final point I wanted to make is that the reporting of the denial of the IDHFS Medicaid provider license here is exactly the kind of thing that the doctor was required to report under the Medical Practice Act anyway, under section 22A12. The full site is 225 ILCS 60 slash 22A12. So, the consent decree was just reflecting the same kind of reporting requirement that he was under regardless of the consent decree. The only difference was that the timeline for reporting was slightly shorter. It was 10 days instead of, I believe, 30 or 60 days. And that is a reflection of the fact that under the consent order, he was under probation. So, he was under additional scrutiny and he agreed to that additional scrutiny. I might have missed it, but I'm not aware. Is there anything in the record that tells us how often a doctor who is part of the Medicaid reimbursement program has to reapply for that? Like, does that last, once you apply, it lasts for 25 years? Or you have to try again every two years? You have to try again every five years? Is there any time limit in that? I'm not aware. It could be in the record. I'm not aware. The situation we have here is that in 1996, Dr. Jake Harris voluntarily withdrew from participation in the program. And so, he reapplied in 2022 to reinstate that. Well, I'm just trying to figure out how this fits with Justice Walker's idea that this might just be the status quo. At IDPR, you have to reapply for your doctor's license or your nail tech license and your wrestler license. So, I'm just thinking that Medicaid, I would think it would be unusual for a Medicaid license or permission to bill Medicaid. I think it would be unusual for that to be something that you do once. And then for the next 25 years, you still have that. I would, just on my own idea, is that you probably have to re-up for that. Sort of like judges have to re-up through elections. I couldn't find it in the record. I was just curious about whether you had it. So, we'll leave it at that. We both don't have it. Thank you. Yeah. Unfortunately, Your Honor. But I agree that the concept applies and makes sense. And, you know, again, for the reasons that we stated in our brief and that I've already gone through, I don't think that no change to the status quo in and of itself precludes this from being an adverse action. Well, what about Mr. Petticone's argument that the Illinois Department of Health and Family Services were still, that the matter was still under appeal at that agency? What about that argument? Or is that just not a correct argument? I mean, we think it's incorrect for two reasons, Your Honor. The first reason is that there's no authority that I'm aware of, and counsel has cited no authority for why a consent order between the Department of Financial and Professional Regulation and a third party would be controlled by another agency's regulations. No, no, no. That's not what I'm saying. I'm saying that if the matter is still pending before another agency, then there's clearly no adverse action yet. There's not usually not adverse action until the order is final. And Mr. Petticone's argument, and correct me if I'm wrong, Mr. Dickerson, but I thought his argument was that the matter is pending. The matter is still pending. And so the second point is that there doesn't need to be finality for it to be an adverse action. Also, you agree that it's still pending before ID? I mean, I don't know. Under the record, it certainly was still pending, at least at the time. Okay. Well, that's how we only go on by the record. Remember I asked you earlier not to your personal opinions when you were about to do that. I said, no, let's stick with the record. And you ask if you could give your personal opinion. So again, you want to give your personal opinion. We don't want your personal opinion. You agree that the record shows that it's still pending, right? Yes, Your Honor, but again- So therefore, may I please finish? Yeah, of course, of course. So therefore, it's not a final order from the department, correct? Yes. From the Department of Health and Family Services, there's no final order. So they could ultimately say that we're going to reinstate your license. We don't know what's going to happen there. But yet, we've made another decision. It's kind of like when the trial court makes the decision, if it's not a final order, and of course, there's no 3048 finding, the appellate court is not going to touch that because we don't know what's going to ultimately happen in the trial court. I think it would be the same way here. I don't see why anybody would touch that until the Department of Health and Family Services has given us a final order on this after the appeal process. Yes, I agree with you, Mr. Sudeikis. I just want to ask a question. Once the Inspector General denied his Medicaid reinstatement application, he can't get it until maybe at the time of the appeal, that's overruled, and he does get his Medicaid reimbursement license back. But for the time after that decision was made, until the appeal is done, he cannot get that money from Medicaid. So there has been a decision that's adverse to him. It's not like he's going to get the money, and if the appeal goes against him, he has to pay it back. He just can't get any until the appeal is done. So that interim period is still something that is against him. It's still that is adverse to his practice. So, Justice Kuczynski, that is my understanding of the situation. There doesn't need to be finality of that decision for it to be adverse. It's preventing him from getting that reimbursement, and there is that finding in the decision that the medical care that he was providing was in excess of needs and grossly inferior and created a risk of harm. But then, you know, there's also looking to the specific language in the consent decree in C-4. It doesn't say final adverse action or adverse final action, and there are places in the Medical Practice Act and in the forms that the department has for reporting of events, as pointed out in my colleague's brief, where the department has used adverse final action or final adverse action. And so there's an intended difference there where it doesn't need to be a final order. It's just a decision that's been made that is adverse to his interests. Any adverse action, any. That's pretty inclusive. So if a trial court has made a ruling, and the matter is still before the trial court because there's been a motion to reconsider, your argument would mean that you could go ahead and start garnishing wages and everything, even though there's a motion to reconsider pending. And that's just not the way it works. That's not the way the law works. The law is a little bit more fair than that, and it should be. Well, this isn't necessary. This isn't garnishment. It's not a... I know that. That was just an example. Of course it's not a garnishment. This is also not a court action until the appeal went to the trial court. We're just simply talking about what the we're reviewing. We're not reviewing the trial court's order. We're only reviewing the order of the administrative agency. And what's happening in the administrative agency is that they're making a decision that's based on another administrative agency's decision, which is not yet final. You just told us yourself, according to the record, it's not final. It's not. Do you want to respond? Denial. It's the doctor's failure to report that that denial occurred. So it's because of the omission, the failure to report of the doctor that that decision occurred. So, Mr. Jacobson, just to be clear, there's a consent order that says you, doctor, are required to notify us for an adverse action, so forth. He gets the letter denying Medicaid reinstatement after the peer review comes out and says he doesn't, he is not incited to it. He needs to report that to you in 10 days. He didn't do it. Therefore, there was the automatic suspension. For our purposes, the question is, does he get a hearing on the merits because he contested the factual basis? So, that's the issue here. And I hope Mr. Caddo, on reply, just, we stay focused. That's really just the issue here is, was he deprived on a hearing on the merits that he should have been entitled to? Isn't that the question? That's the only question, right? I think that is the determinative question, Your Honor. And what harm would it have been for the agency to give him a hearing? I mean, your client came in and said, no, he's not entitled to a hearing because he didn't contest a factual basis. There was robust papers and arguments on this topic. He ultimately prevailed. Is this the normal operandi of the agency to try to not give people hearings? Or are hearings pretty regular with this agency? This is my understanding is that hearings are regularly held on the licensing issues before the agency. I think what we've got is a very unique circumstance. And based on the facts here, what happened is that none of the facts were contested. And based off of that determination, then the ALJ decided that there was no need to hold that hearing. There's no longer an entitlement to the hearing. And at that point, it just became legal arguments as to the effects and the interpretation of Section L in light of the doctor receiving this letter, correct? Yes, Section L and Sections C4 and C5. That's exactly right. So, you don't believe that the issue of there being no final decision by the original administrative agency, Department of Family Health and Family Services, that that's just a factual issue? Is that what your argument would be, Mr. Jekelson? If I understand your question correctly, Justice Walker, there is no factual dispute in this record that the denial by the Department of Health Care and Family Services of his application was not final because he had appealed it within the administrative agency. There is no fact issue about the finality of that. Right. And there's no decision on appeal on that issue as well, correct? Not in the record, no. But it doesn't have to be final because the language of the consent decree is any adverse action, not any final adverse action. Yes, yes. And my feeling is that the Department of Professional Regulations wanted to know about any adverse action so they could keep track of it while it's on appeal if it goes to appeal. So, they would just be aware of it and keep an eye on it and not have conflicting information flying around. So, the use of the word any to me is pretty important. Yes, exactly, Your Honor. Well, unless there are any further questions, I think if you're time, we will rest on our brief. Thank you, Mr. Jekelson. And Mr. Petticoat. Yes, John. One thing I think is interesting that of the criticism of the MQRC that were reflected in the denial letter was that it was medical care and excessive needs for these patients. And there's no economic incentive for Dr. Gekaris to have treated people in excess of their needs since he's not getting paid. So, I don't know that that should be viewed as a thing for him. With respect to this final action or adverse action versus final adverse action, when counsel was talking about 22A12 of the Medical Practice Act, he said that Dr. Gekaris was subject to the same reporting requirement except the only difference was the time frame of when it had to be reported, which is 10 days, normally it's 60 days. But because of the conditions of the consent order, it was shortened down to 10 days. But the very form that's used to report that, that's on the Department of Financial and Professional Regulations website, which is in the record as a link in my brief, makes it clear that it's the reporting of the final adverse action, not non-final adverse action. That's made clear on that form. And my argument with respect to the regulations, the very people or very agency that sent out the letter denying the application for reinstatement says that that letter, that action is not action of any kind until it's been final. So it's not really a question of whether it's adverse action. I argue you can't say it's adverse action if it doesn't count for action. Because the own agency that issued the letter says this doesn't count as action of any kind until there's a final administrative ruling done. So I don't think you can call it adverse action if the very agency that issued the letter says it's not action of any kind up until even today as we speak. Because in the record, it has not. And I did mention that the case has been continued from time to time because we want to see what this court's going to do with the case. So I say it's not action. If the regulations say that their own letter is not action of any kind yet, then it can't be considered adverse action because you've got to have action to have adverse action. Do you have the record site for that letter? Do you have the record site, Andy? The letter. Is it the letter from the department? Yes. The one that you just described where it says doesn't count as action of any kind. Oh, that's not in the letter. Is that a direct quote? The direct quote is from 89 Illinois Administrative Code 104.210. And the direct quote is, I won't read you the first part of it because it relates to other sections. Okay. So that's in the statute, but it's not in the letter. But the letter does reference section. It references the section in the letter as 104.200, like, et cetera. Thanks. That's good. Thanks. Beyond that, if I could just say that it says the action shall not take place until the final administrative decision has been issued. So if we haven't had a final administration being issued yet, then the action, which is the denial, can't take place yet. So if you don't have action, you can't have adverse action. That's my argument with regard to that. I have, what, 30 seconds left? I don't believe that the MQRC is not a board. It's not an established board. It's a collection of physicians who agree to serve as a committee to be able to review records. I don't think it's a separate entity in and of itself. I think, isn't there, don't they have their own organization or entity? I don't think that it's just, like, some, like, people coming together and like, it's, how do I use the word, under the auspices of THS, right? They can't act on their own accord. They have the power to make recommendations to the department. And they can also recommend that action be taken against the doctor based on their quality of care review. And in this case, they made no such recommendation for action to be taken. All they did was recommend their findings to the department. But they do, according, they're attached, there's a large document attached to, I think maybe both of our briefs, which is the, or certainly it's in the record, is the annual report, I think, for 2024, 2025, for the O&M Department, the Inspector General's Office, where they break down the different departments that they have, the Bureau of Investigation, the Bureau of Medicaid Integrity Services. And I would like to point out to the court that there's an error in my brief, if I may. On page 29 of my opening brief, I noticed that I used the letters BOI when I Bureau of Investigation. And the Bureau of Investigation was not involved in Dr. Giacaris' case. It's the Bureau of Medicaid Integrity under which the MQ Medical Quality Review Committee sits. So if you could just note that that was a mistake, and I certainly didn't mean to do it. But I think, and you would say, you thought that the key issue is whether we were entitled to a hearing or not. And I think what's happened is somebody has decided what the facts are with regard to the Dr. Giacaris did or didn't do, when nobody said what he did or didn't do. And the burden's been shifted on me to come up with facts, even though no one said what he did or didn't do in terms of this petition that we filed. And again, I think we were entitled to contest the factual basis that was in that order of discipline, and there was none. And it doesn't, it is not by default assumed to be stated when nobody has stated it. And so the burden seems to have shifted to me to come back and talk about what the factual basis is when the department hasn't set forth what the factual basis is. I don't think that's the way it's supposed to work. We contested that factual basis, and I believe at the time we filed that petition, we were entitled to a hearing according to our contract with the department. And there is no rule or regulation of the department that allows them to dismiss our petition. The only time you can a petition, according to the rules, is when we violate the rules on discovery. There is no rule that allows them. Mr. Peck, wasn't this more in the nature of a summary judgment, not a dismissal of your petition? I mean, you know, here we have an agency saying there's no disputed fact. So we're going to now interpret based on these uncontested facts. Make your arguments as to why this is not an adverse action. Make your arguments as to why it's not an investigation. But the bottom line is the agency said, you know, your client got this letter. He didn't report it within the 10 days. That's uncontested. Now where do we go from there? So in terms of a factual evidentiary hearing, there's no, like, there's nothing to put on as evidence with respect to that. That's your argument and interpretation as to whether any adverse action includes this or not, or whether it's an investigation. And, I mean, that's another part of your argument on appeal. But in terms of that hearing, am I correct on that? Well, I think her ruling was sort of in the nature of a ruling on a motion for summary judgment where there was no motion for summary judgment filed and no motion for summary judgment permitted by the department's own rules. But I say this because you keep referring to your petition being dismissed. It wasn't dismissed. It was, well, it was removed from the call and it was, it was, it was not, the hearing that was supposed to be afforded under Section L to us within 30 days was not reset. So the effect of it was to set aside our petition. Well, Mr. Petticoat, it sounds to me, though, that your argument was that there was no action, therefore there was no need to report anything because no action has occurred because you said that the letter states that there's no action. Yeah, that's one of my, that's one of my arguments. The case presents more than one issue that I felt I needed to argue. So if there's no action, clearly there's no adverse action. You can't have adverse action if you don't have action. I mean, that seems like a tautology, if you will. Anything further, Mr. Petticoat? No, Your Honor. Okay. Justice, is there any further questions for either of the lawyers? No. Okay, Justice, if there's no further questions, this hearing is adjourned. Thank you both for your thorough arguments and you all know the case really well and we appreciate that. We appreciate your thoroughness and your excellence. Have a good day. Thank you.